WALBROOK INSURANCE COMPANY, LTD. et al., Appellees,

v.

CTL ENGINEERING, INC., Appellant;

Bob Evans Farms, Inc., Appellee.

[Cite as *Walbrook Ins. Co., Ltd. v. CTL Eng., Inc.* (1992), 78 Ohio App.3d 295.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP-749.

Decided Feb. 11, 1992.

*Clausen, Miller, Gorman, Caffrey & Witous, P.C., Stephen D. Marcus* and *Mary F. Stafford; Wiles, Doucher, Van Buren & Boyle Co.,* and *Thomas J. Keener,* for plaintiffs-appellees.

*Bradley, Topper & Farris Co., L.P.A., Philip R. Bradley* and *Richard D. Topper,* for defendant-appellant.

*Vorys, Sater, Seymour & Pease* and *Gerald P. Ferguson,* for defendant-appellee.

WHITESIDE, Judge.

Defendant, CTL Engineering, Inc. ("CTL"), appeals from a judgment of the Franklin County Court of Common Pleas and raises two assignments of error, as follows:

"1.  A deductible provision in an insurance policy wrought with ambiguities and capable of two interpretations is to be construed against the insurer and in favor of the insured, therefore the trial court erred in granting the motion for summary judgment in favor of the insurer, Plaintiff–Appellant, Walbrook Insurance Company, Ltd., and in denying the motion for summary judgment submitted by the insured, Defendant–Appellant, CTL Engineering, Inc.

"2.  The trial court erred in not granting the motion of Defendant, CTL Engineering, Inc., for leave to amend its answer to include a counterclaim for

reformation of the insurance policy on grounds of mutual mistake and in failing to consider CTL Engineering, Inc.'s evidentiary material submitted with its motion for summary judgment."

This matter originated as a declaratory judgment action seeking an interpretation of a deductible clause in a professional liability insurance policy issued to defendant CTL by plaintiff Walbrook Insurance Company, Ltd. ("Walbrook"). The first and only claim made by CTL under this policy was with respect to work performed for Bob Evans Farms, Inc. The claim was settled; however, Walbrook applied two deductibles in the total amount of $115,000, which CTL had to pay, with Walbrook paying the remainder of the settlement.

CTL contends that there is only one deductible under the policy, that being in the amount of $15,000, with the aggregate deductible during the year being $100,000. Walbrook, on the other hand, contends that both deductibles apply, so that the appropriate deductible was the $100,000 aggregate deductible in addition to the $15,000 individual loss deductible.

The trial court found for Walbrook and applied two deductibles, stating in part:

"Based on the language regarding deductibles in the policy, and especially the use of plurals and the word 'further,' the Court concludes that Plaintiffs' reading of the policy is correct. The applicable policy clauses create two separate layers of deductibles rather than a series of $15,000 deductibles subject to one overall cap. * * * The arguments regarding oral statements as to the size of the deductible do not rise to the level of a novation or other authorized modification."

■ The first assignment of error raises the basic issue as to interpretation of the policy and as to whether it is ambiguous. At the outset, we must concur that there is ambiguity in the policy, the language being anything but clear when the policy is read in its entirety.

Walbrook essentially urges a superficial reading of the policy and ignoring of the word "aggregate" and most of Clause V of the policy. The schedule portion of the policy provides in pertinent part, as follows:

"Item 4. Deductibles.

"Subject to clause V., the deductibles are:

"A. Each and Every Loss $15,000.

"B. Subject to the application of Each and Every Loss Deductible, a further Annual Aggregate Deductible of losses otherwise recoverable hereunder amounting to $100,000."

Said provision is neither clear nor complete in itself. The each and every loss deductible is clear on its face except the reference to being subject to Clause V. The annual aggregate deductible is anything but clear, being not only subject to Clause V of the policy but also subject to "application" of the each and every loss deductible. Walbrook ignores both this prefatory phrase as well as the word "aggregate" in its contention that the language is clear, focusing only upon the word "further." The application of the policy under Walbrook's contention adopted by the trial court would mean that paragraph B would be read, as follows: "A further annual deductible of losses otherwise recoverable hereunder amounting to $100,000." Walbrook's interpretation gives no meaning either to the prefatory clause or the word "aggregate" as indicated above.

Regardless of the conclusion, however, it is necessary to refer to Clause V, since both deductibles are expressly subject thereto. This clause reads in pertinent part, as follows:

"V. LIMITS OF LIABILITY AND DEDUCTIBLES

"A. After the Assureds have paid or been held legally obligated to pay claims made against them and/or incurred Legal Fees, Costs, and Expenses which after reduction by the Each and Every Loss Deductible as set forth in Item 4.A. of the Schedule, would but for the terms and conditions of the Annual Aggregate Deductible Clause as set forth in Item 4.B. of the Schedule be recoverable under this Policy the Insurers shall then be liable to pay the percentage of Loss, including claim expenses, set forth in item 3.B. of the Schedule up to the Limit of Liability set forth in Item 3.A. of the Schedule. It is warranted that the remaining percentage of Loss and the applicable deductible amount(s) shall be borne by the Assureds at their own expense."

This paragraph is somewhat difficult to interpret. It does not explain in any way how the annual aggregate deductible clause should be applied but, instead, merely states that it must be considered in connection with the making of payments by the insurer to the assured under the policy. The next paragraph of Clause V(A), however, is more revealing and provides, as follows:

"Thereafter in respect of all claims otherwise recoverable under this Policy after the exhaustion of the Annual Aggregate Deductible as set forth in Item 4.B. of the Schedule, the Each and Every Loss Deductible as set forth in Item 4.A. of the Schedule shall apply and all such deductible amounts shall be borne by the Assureds at their own expense."

This clause indicates that the annual aggregate deductible should be exhausted before the each and every loss deductible of the schedule shall apply. There is no language in the policy indicating that both the each and every loss

deductible and the annual aggregate deductible apply to the same claim. There is nothing in the policy indicating that there are two deductibles to be applied at the same time. Further clarification is gleaned from Clause V(B), which provides in part, as follows:

"Claims involving the same Wrongful Act or Interrelated Wrongful Acts of one or more of the Assureds shall be considered a single Loss and only one Deductible shall be applied to each such single Loss * * *."

On the other hand, Clause V(D) provides in pertinent part that:

"In the event of a single loss being covered in part by Insuring Clauses 1.A. and/or 1.B. and/or 1.C., the Deductible Amounts stated in Items 4.A. and 4.B. should be applied to the total amount of such loss."

CTL's contention is that the meaning of the policy is that the $15,000 each and every loss deductible shall be applied only until the maximum aggregate of $100,000 is reached. This, however, is inconsistent with the second paragraph of Clause V(A), set forth above, which clearly states that the each and every loss deductible shall apply *after exhaustion* of the annual aggregate deductible. Thus, CTL's contention would give no meaning to the second paragraph of Clause V(A) of the policy, and in light of that clause would essentially eliminate the annual aggregate deductible. CTL does point out that other provisions of the policy contemplate a single deductible such as clause VI(A), which provides that, in case of the assured's rejection of a settlement recommended by the insurers, "the Insurer's liability for the Claim shall be limited to the amount in excess of the deductible which the Insurers would have contributed to the settlement had the Assureds consented to the settlement."

Unfortunately, neither party has suggested a third interpretation of the policy, which gives meaning to all of the provisions of the policy. Instead, each relies upon a strained interpretation of the policy favorable to it.

First, there is no provision in the policy justifying a conclusion that there are to be two deductibles applied. The word "further" can mean "in addition" as intended by Walbrook. The word "aggregate," on the other hand, can mean a body of units or parts associated with one another as contended by CTL and also can mean the entire sum or amount. Nevertheless, the policy does not provide for the application of both the each and every loss deductible and the annual aggregate deductible at the same time.

Under Walbrook's theory, if there were ten $25,000 claims during the year, there would be no payment due under the policy since the $15,000 each and every loss deductible would first be deducted and then the annual aggregate deductible would be applied so that no payment would be due. On the other hand, if a single claim equalled $250,000, under Walbrook's interpretation, its

liability would be to pay $135,000 since a single each and every loss deductible would be applicable. (The amount payable would be reduced to ninety-five percent by Clause V[C] of the policy.) There is no indication that the policy is so intended to be applied so as to create such disparate coverage, even though application of the each and every loss deductible can have somewhat similar results.

Essentially, in light of the ambiguity in the language and construing the policy most favorably to the assured, CTL, we conclude that the policy provides that only one deductible is to be applied with respect to any one loss under the policy. Here only a single loss is involved. However, the policy provides that there shall be an annual aggregate deductible of $100,000, the meaning of which appears to be that the first $100,000 of loss, whether in a single loss or in multiple losses, shall be deducted before there is any payment due to the assured from the insurer. Only after exhaustion of the annual aggregate deductible (regardless of the number of losses involved) does the each and every loss deductible apply as provided in the second paragraph of Clause V(A) of the policy, which states that, "after the exhaustion of the Annual Aggregate Deductible * * * the Each and Every Loss Deductible * * * shall apply."

There is nothing in Clause V(A) indicating that the each and every loss deductible shall apply in addition to the annual aggregate deductible with respect to any single claim. Rather, the first paragraph of Clause V(A) tends to indicate to the contrary. It refers to claims which "would but for the terms and conditions of the Annual Aggregate Deductible Clause * * * be recoverable under this Policy," rather than to a reduction in the claim in addition to the each and every loss deductible. Thus, the annual aggregate deductible is applied prior to any payment being due from Walbrook to CTL, regardless of the number of claims involved. Once $100,000 in claims has been incurred and the annual aggregate deductible applied, then the each and every loss deductible shall apply. This is not a situation where there are two deductibles: (1) each and every loss deductible; and (2) the annual aggregate deductible applied, to any single claim; nor is it a situation where there are a series of $15,000 deductibles amounting to a limited aggregate of $100,000.

Applying the policy in this fashion results in the proper deductible under the circumstances herein of being the entire amount of the annual aggregate deductible or $100,000. Walbrook, however, made two deductibles, the $100,-000 annual aggregate deductible and an additional $15,000 each and every loss deductible. This deductible is excessive, and an additional $15,000 should have been paid by Walbrook to CTL since only the $100,000 annual aggregate deductible would be appropriately deducted under the circumstances. For this reason, and to this extent, the first assignment of error is well taken.

■ By the second assignment of error, CTL contends that it should have been granted leave to amend its answer to include a counterclaim for reformation of the policy. Plaintiff raised the issue of estoppel by its complaint, contending that only a single deductible, the each and every loss deductible, was contemplated when the policy was purchased. CTL has presented evidentiary material indicating that there was a mistake on its part as to the existence of the annual aggregate deductible. However, the evidentiary material does not indicate the mistake to have been mutual. We find no abuse of discretion on the part of the trial court, although perhaps a misunderstanding was demonstrated.

CTL apparently now concedes that the representations of Walbrook's agents did not give rise to estoppel. Rather, CTL now contends that both parties were under the impression at the time of contracting that the only deductible was the $15,000 each and every loss deductible. Walbrook points out, however, that the policy had been in effect several years before this loss, with the actual policy language being available to CTL which made no protest. In addition, the affidavit evidence does not indicate that the parties contemplated there not to be an annual aggregate deductible in addition to the each and every deductible but only that the parties understood that the amount of the each and every deductible was $15,000.

Even assuming that it would have been within the discretion of the trial court to have permitted CTL to amend its answer so as to include a counterclaim for reformation, we find no abuse of discretion in denying such motion. Not only does the affidavit evidence not demonstrate a claim for reformation, but the motion to amend was made long after the answer had been filed and only after both parties had filed motions for summary judgment and only a short while prior to the trial court's decision upon the·motions for summary judgment. Finding no abuse of discretion on the part of the trial court in overruling CTL's motion to amend its answer so as to include a counterclaim for reformation, the second assignment of error is not well taken.

For the foregoing reasons, the first assignment of error is sustained, the second assignment of error is overruled, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court with instructions to enter a new declaratory judgment consistent with this opinion and in accordance with law.

*Judgment reversed*
*and cause remanded*
*with instructions.*

McCORMAC and BOWMAN, JJ., concur.